Filed 5/26/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SONDRA WISE KUMARAPERU, | B253978 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC503228) |
| v. | |
| JOHN FELDSTED et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of California, County of Los Angeles.  Susan Bryant-Deason, Judge.  Affirmed.

Sylvester, Oppenheim & Linde, Richard D. Oppenheim, Jr., David A. Seeley, for Plaintiff and Appellant.

Jacks & Maybaum, Bradley W. Jacks, Russell W. Clampitt, for Defendants and Respondents.

_____

In this legal malpractice action, plaintiff Sondra Wise Kumaraperu alleges her attorneys negligently advised her to draw a check on an account that she owned but on which she was not a signatory and deposit the funds into another account she owned, which she alleges exposed her to a criminal forgery prosecution. The trial court sustained the attorneys' demurrer without leave to amend on the grounds that Kumaraperu bore unclean hands and failed to allege she had been found factually innocent of forgery. We affirm, but on a different ground: Transferring one's own funds from one account to another cannot be the basis of a forgery prosecution absent intent to defraud, even if the transfer is effected by means of a false signature. Therefore, plaintiff's criminal prosecution could not reasonably have been foreseen by defendants, and any damages she incurred defending against it were not caused by them.

## BACKGROUND

We take the facts from plaintiff's first amended complaint, which is operative. Plaintiff and her husband, Neil Kumaraperu, owned a private daycare center and school in Montrose, California known as the Pennsylvania Avenue Montessori Infant Care and Preschool (the school). At one point, Neil had conveyed an interest in the school to Ananda and Ranjini Niyarapola, but when they defaulted on payments the interest reverted to the Kumaraperus.

The school maintained a checking account and an operating account. Neil and the Niyarapolas were the only signatories on the checking account, the latter remaining so even after their interest in the school reverted to the Kumaraperus. Plaintiff was a signatory only on the operating account.

Neil died on January 17, 2012, leaving plaintiff as the sole owner and operator of the school; no other person owned an interest in the school or its assets or had any capacity to operate it, and Ananda and Ranjini Niyarapola expressly disclaimed any interest in the money in the school's checking account.

While operating the school, plaintiff discovered the school's director had inadvertently deposited approximately $36,500 in tuition checks into the checking account rather than the operating account, funds that were needed immediately to pay

2

operating expenses such as rent and salaries. Having no access to the checking account, plaintiff sought legal advice from defendants as to how to move the money into the operating account. Defendants advised her to draw a check on the checking account payable to herself in the amount of $36,500, sign it with Ranjini Niyarapola's name, and deposit the check into the operating account. Defendants informed plaintiff this transfer would be legal and proper.

Plaintiff did as defendants advised, and used the funds to operate the school. She was later charged by the Los Angeles County District Attorney with forgery, after which defendants denied having advised her to make the transfer and indicated they would neither assist with nor provide testimony in her criminal defense.

Plaintiff sued defendants for professional negligence, breach of contract, and fraud, alleging they breached their agreement to represent her "properly and competently" and knowingly misrepresented that forgery was legal. She alleged defendants' actions put her in legal jeopardy, in that she became the object of a criminal prosecution, and caused monetary damages in the form of attorneys fees expended to defend against that prosecution. She also suffered "emotional distress, worry, anxiety, chagrin, pain, suffering, humiliation, and harm to her personal reputation in the community."

Defendants demurred to the first amended complaint, arguing the doctrines of unclean hands and in pari delicto barred plaintiff's claims, the fraud action was uncertain, and plaintiff's failure to allege she had been found actually innocent of the crime of forgery precluded her action for legal malpractice. The trial court agreed on all grounds and sustained the demurrer without leave to amend. Kumaraperu timely appealed from the resulting judgment.

On January 8, 2015, a preliminary hearing was held in the criminal action against plaintiff, at the end of which Judge Patrick J. Hegarty dismissed the case on the basis of insufficient evidence. (*People v. Kumaraperu*, Los Angeles Superior Court Case No. GA088431.) We grant plaintiff's request for judicial notice of the minute order dismissing the case and the court's finding therein of insufficient evidence. (Evid. Code,

3

§ 452, subd. (d).)  We also grant judicial notice of the preliminary hearing transcript, but only to the extent it sheds light on the various actors' claims, not for the truth of statements made during the hearing.  (*In re Vicks* (2013) 56 Cal.4th 274, 314 [court may take judicial notice of a judgment in another case, but not of the truth of facts asserted during testimony in that case].)

On February 19, 2015, we sent a letter to the parties asking for supplemental briefing answering, among other questions, how defendants' conduct injured plaintiff.  Both sides responded with letter briefs, which we have considered.

## DISCUSSION

### A.     Standard of Review

When a demurrer is sustained, we review the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory.  (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)  We accept as true all properly pleaded material facts, but not contentions, deductions, or conclusions.  (*Id*. at pp. 42-43.)  "[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  A plaintiff has the burden to show what facts she could plead to cure defects in the complaint.  (*Ibid*.; *Total Call Internat., Inc. v. Peerless Ins. Co*. (2010) 181 Cal.App.4th 161, 166.)  To meet this burden on appeal, the plaintiff must enumerate the facts and demonstrate how they establish a cause of action. (*Ibid*.)  "On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory." (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

### B.     Imposture Without Fraud is not Forgery

Plaintiff alleges she retained defendants to advise her how to transfer money from her own business checking account to her own business operating account.  She alleges defendants breached the duty of care by failing to advise how to do so properly, instead

advising her to sign another's name on a check and deposit it into the operating account, which exposed her to a criminal prosecution for forgery.

By accepting employment to give legal advice, an attorney "impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." (*Lucas v. Hamm* (1961) 56 Cal.2d 583, 591.)  To state a cause of action for legal malpractice, a plaintiff must plead "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199.)

When poor legal advice proximately results in otherwise avoidable litigation, a client may recover as damages attorney fees she incurs in that litigation.  (*Ishmael v. Millington* (1966) 241 Cal.App.2d 520, 525-526.)  A plaintiff seeking to recover such damages must allege a causal connection between the defendant's breach of duty and the injury.  (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 900.)  Where the pleaded facts do not naturally give rise to an inference of causation, the plaintiff must plead specific facts affording such an inference.  (*Id*. at pp. 900-901; see *Bockrath v. Aldrich Chemical Co*. (1999) 21 Cal.4th 71, 78.)

Plaintiff adequately alleges negligent conduct by defendants, because when a signatory on a financial account dies, the proper course is for the account owner to update the account card, not to pose as another signatory.  But plaintiff fails to allege causation because signing another's name on a check drawn on one's own account would not subject the owner to criminal or civil liability absent intent to defraud.

The negotiation of a check is a matter of private contract between a financial institution and a depositor.  (*Estate of Fisher* (1988) 198 Cal.App.3d 418, 429 ["The account card serves as a contract between the depositor and the financial institution"].)  A check is a signed instrument by which the depositor (the drawer) instructs the financial institution (the drawee) to transfer the depositor's funds to a check bearer in accordance

5

with the account agreement. (Cal. U. Com. Code, §§ 3103, subd. (a); 3104, subds. (e) ["An instrument is a 'note' if it is a promise and is a 'draft' if it is an order"] & (f) ["'Check' means . . . a draft . . . payable on demand and drawn on a bank"].) The purpose of the signature is to authenticate and effect the instruction, i.e., to authorize and obligate the financial institution to pay out the funds in accordance with the depositor's prior instructions. Although the prior instructions will state what signatures are valid to invoke the financial institution's duty to pay, so long as the signer intends to effect a transaction, a valid signature may be made by penning "any name, including a trade or assumed name, or by a word mark, or symbol." (Cal. U. Com. Code, §§ 3103, subd. (a)(6), 3401, subd. (b).)[1] It is the act of signing the instrument, not the name signed, that creates the transaction.[2] Simple imposture may constitute a breach of the account owner's agreement with the financial institution, but it is not a crime.

To make imposture a crime requires intent to defraud. "Every person who, with the intent to defraud, knowing that he or she has no authority to do so, signs the name of another person" to a check or, "with the intent to defraud, falsely" passes a forged check, is guilty of forgery. (Pen. Code, § 470, subds. (a) & (d).) But plaintiff alleges she owned the school, which means she owned the funds in its checking account. Transfer of funds that one exclusively owns, without obligation to third parties, from one account to another does not by itself constitute fraud, even if the transfer is effected by an imposture that violates the account agreement. "[W]hat makes the difference between the impostor

---

[1] California Uniform Commercial Code section 3401 provides: "(a) A person is not liable on an instrument unless (1) the person signed the instrument, or (2) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under Section 3402. [¶] (b) A signature may be made (1) manually or by means of a device or machine, and (2) by the use of any name, including a trade or assumed name, or by a word mark, or symbol executed or adopted by a person with present intention to authenticate a writing."

[2] This makes sense in today's banking, where checks are processed by machine and drawer signatures are not, at least at present, compared to account cards except retroactively when there has been an allegation of impropriety.

in law and the forger in law is the intent of the maker, something not to be found on the face or back of the instrument." (*United States v. Bank of America Nat'l Trust & Sav. Asso.* (9th Cir. Cal. 1959) 274 F.2d 366, 368.) Assuming the facts are as plaintiff alleges, it follows that defendants could not reasonably have foreseen she would be prosecuted for forgery.[3]

## C. Defendants' Conduct was not the Proximate Cause of Plaintiff's Injury

To maintain an action for damages based on the wrongful act or neglect of another, a plaintiff must allege the wrongful act was a direct and proximate cause of the injury. "It is reasonably well settled . . . that the causation inquiry has two facets: whether the defendant's conduct was the 'cause in fact' of the injury; and, if so, whether as a matter of social policy the defendant should be held legally responsible for the injury." (*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 252.) To determine causation in fact, California has adopted the substantial factor test set forth in the Restatement Second of Torts, section 431. (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1052; Rest.2d. Torts, § 431 [negligent conduct is a legal cause of harm if it is a substantial factor in bringing about the harm].) An event will be considered a substantial factor in bringing about harm if it is "recognizable as having an appreciable effect in bringing it about." (Rest.2d Torts, § 433, com. (d).)

An event that enables harm ultimately to occur need not necessarily be a substantial factor in bringing about the harm. "[C]are must be taken to avoid confusing two elements which are separate and distinct, namely, that which causes the injury, and that without which the injury would not have happened. For the former the defendant may be liable, but for the latter he may not; that is to say, in order to make a defendant

---

[3] We must assume the facts are as plaintiff alleges. However, we note that at her preliminary hearing, Ananda Niyarapola testified that he considered the money in the checking account to belong to him because Neil Kumaraperu had orally agreed before he died to pay him approximately $150,000 from that account—"eventually," when the school was sold. This somewhat contradicts plaintiff's allegation that Neil claimed no interest in the checking account funds, and would hint at an explanation why the district attorney prosecuted an otherwise inexplicable forgery complaint.

7

liable his wrongful act must be the *causa causans* [immediate cause], and not merely the *causa sine qua non* [necessary antecedent] [citation]." (*Johnson v. Union Furniture Co.* (1939) 31 Cal.App.2d 234, 237.) "In a philosophical sense the causes of any accident or event go back to the birth of the parties and the discovery of America; but any attempt to impose responsibility upon such a basis would result in infinite liability, and would 'set society on edge and fill the courts with endless litigation.' As a matter of practical necessity, legal responsibility must be limited to those causes which are so close to the result, or of such significance as causes, that the law is justified in making the defendant pay." (Prosser, *Proximate Cause in California* (1950) 38 Cal. L.Rev. 369, 375, fns. omitted.)

The question of proximate cause is "an issue of whether the defendant is under any duty to the plaintiff, or whether his duty includes protection against such consequences." (Prosser, Torts (4th ed. 1971) § 42, p. 244).) There is thus an element of foreseeability in the inquiry, and a defendant owes no duty to prevent a harm that was not a reasonably foreseeable result of his negligent conduct. (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 779 ["the question of 'the closeness of the connection between the defendant's conduct and the injury suffered' [citation] is strongly related to the question of foreseeability itself"].) The court's task "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed." (*Id.* at p. 772.) "'[F]oreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.'" (*Bigbee v. Pacific Telephone & Telegraph Co.* (1983) 34 Cal.3d 49, 57.) Causation in fact is thus ultimately "a matter of probability and common sense." (*Osborn v. Irwin Memorial Blood Bank*, *supra*, 5 Cal.App.4th at p. 253.) "If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified

8

that the causal relation exists. In drawing that conclusion, the triers of fact are permitted to draw upon ordinary human experience as to the probabilities of the case." (Rest.2d Torts, § 433B, com. b.)

Ordinarily, foreseeability is a question of fact for the finder of fact, but it may be decided as a question of law if under the undisputed facts there is no room for a reasonable difference of opinion. (*Cicone v. URS Corp*. (1986) 183 Cal.App.3d 194, 206; *Basin Oil Co. v. Baash-Ross Tool Co*. (1954) 125 Cal.App.2d 578, 603.)

Here, an attorney could not reasonably foresee that the district attorney would prosecute a depositor for manipulating her own accounts containing her own money to which no one else had any claim. Such a result would be highly extraordinary under the circumstances plaintiff alleges because a key element to the crime of forgery is intent to defraud, and a depositor cannot intend to defraud herself. We therefore conclude as a matter of law that plaintiff failed to allege defendants' conduct was a substantial factor in bringing about her injury.

We asked plaintiff to explain in letter briefing specifically how defendants' negligence harmed her. In response, she merely reiterated that she had in fact been subjected to criminal prosecution for forgery, and would not have been but for defendants' deficient legal advice. This establishes only but-for causation—criminal prosecution would not have occurred absent defendants' negligence—which does not suffice. Plaintiff also argued Feldsted refused to come to her aid by admitting and testifying in the criminal matter that he had instructed her to pose as Ranjini Niyarapola. Plaintiff apparently believes Feldsted's testimony would have supported her forgery defense, perhaps by negating intent. Whether she is correct in this is irrelevant, as the issue is whether defendants caused the prosecution in the first place. In any event, plaintiff can only speculate that Feldsted's intervention would have been helpful in some material way, as she had already represented to the prosecutor that she was following his advice when she posed as Ranjini. Under the prosecution's theory—that the money in the school's checking account did not belong to her—this was no excuse.

Plaintiff's causes of action for fraud and breach of contract similarly fail. To state a cause of action for fraud, a plaintiff must plead an intentional misrepresentation of material fact with knowledge of its falsity and intent to induce reliance, actual reliance, and damages proximately caused by the reliance. (*Gonsalves v. Hodgson* (1951) 38 Cal.2d 91, 100-102; Civ. Code, §§ 1709, 1710.) The elements of breach of contract are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Careau & Co. v. Security Pacific Business Credit, Inc*. (1990) 222 Cal.App.3d 1371, 1388.) As plaintiff alleges she suffered damages only in connection with the criminal prosecution, her failure to allege defendants' conduct as a substantial factor in bringing about that prosecution fails to establish they caused either her fraud or contract damages.

We recognize that plaintiff faced an impossible task. On the one hand she was required to allege lack of intent to defraud so as to deny criminal liability and avoid an unclean hands defense, but at the same time allege a reasonably foreseeable risk of criminal liability, which could only be predicated on her intent to defraud. (The trial court's dismissal of the action based on the doctrines of unclean hands and in pari delicto rested on the latter allegation—prosecution for fraud—but ignored the former—absence of intent to defraud.) Plaintiff's simultaneous allegation of necessary but mutually exclusive facts created a logical impossibility that led to the legal impossibility of defendants being liable in negligence for damages caused by an unforeseeable event.

**DISPOSITION**

The judgment is affirmed. Respondents are to recover their costs on appeal.

TO BE PUBLISHED.

CHANEY, Acting P. J.

We concur:

JOHNSON, J.                    BENDIX, J.[*]

_____
[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.