Filed 5/19/26  McGarry v. Uber Technologies CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JOSEFINA MCGARRY, Individually and as Successor in Interest, etc.<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>UBER TECHNOLOGIES INC. et al.,<br><br>    Defendants and Respondents. | D084711<br><br>(Super. Ct. No. 37-2022-00051776-CU-PO-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

Finn Trial Attorneys, David P. Finn and Alvin M. Gomez for Plaintiff and Appellant.

Wood, Smith, Henning & Berman and Steven R. Disharoon; Perkins Coie and Joshua Patashnik for Defendants and Respondents.

Josefina McGarry appeals a summary judgment entered in favor of Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively "Uber") after the court determined no acts or omissions of Uber or its drivers caused the tragic death of her daughter, Stella Yeh, on a freeway, miles from

where she exited an Uber ride and did not accept a second Uber ride.  On appeal, McGarry contends the trial court improperly granted Uber summary judgment on the issue of causation because there were triable issues of fact regarding foreseeability and whether Uber owed a heightened duty as a common carrier to an intoxicated passenger.  McGarry also contends the court made an improper credibility finding to reject her argument that reasonable inferences could be drawn from the evidence to support her claim that an Uber driver forced Yeh out of his vehicle in violation of the Tom Bane Civil Rights Act (Bane Act) (Civ. Code, § 52.1).  We disagree with each contention and affirm the judgment.[1]

## BACKGROUND

A.    *Factual Background*[2]

Yeh and several college friends attended an off-campus party the night of May 11, 2018, where Yeh drank from a water bottle filled with spirits, played a drinking game, and took shots.  After leaving the party, Yeh and three friends went to a fast-food restaurant in Pacific Beach.  Yeh got into an argument with her friends and insisted on leaving before the group finished

---

[1]    Yeh's siblings were parties to the action in the trial court.  They are not parties to this appeal.

McGarry also initially appealed the summary adjudication order granted to codefentant Louvensky Geffrard.  We dismissed that appeal for lack of an appealable order or judgment.

[2]    We draw the facts from the undisputed facts set forth in the separate statements and supporting evidence submitted in support of and in opposition to Uber's summary judgment motion.  We grant Uber's June 17, 2025 motion to augment the record with the exhibits submitted in support of the motion for summary judgment.  We also grant Uber's June 9, 2025 motion to augment the record with the judgment entered in favor of Uber on June 10, 2024.

their meal.  Either Yeh or a friend called for an Uber ride to take her back to her dorm.

Uber driver Louvensky Geffrard arrived at the restaurant at approximately 12:49 a.m. and Yeh got into the vehicle after Geffrard confirmed the ride and destination.  At a traffic light, Yeh told Geffrard to turn right.  When Geffrard said the Uber application driving instructions told him to turn left to go south toward her college, Yeh became angry.  He complied with her request and turned right.  After they entered the freeway on-ramp for Interstate 5 North, Yeh realized the mistake and told him to make a U-turn.

Because he was unable to make a U-turn, Geffrard drove north on Interstate 5 toward the next exit at Gilman Drive where he planned to turn back.  On the way, Yeh suddenly rolled down the car window and began vomiting.  Some vomit came back into the vehicle and got on the front windshield, dashboard, and Geffrard's clothing.  Geffrard pulled over to the side of the freeway. Yeh opened the car door and finished vomiting.

As they proceeded, Yeh asked Geffrard to let her out of the car.  He said he could not let her out on a freeway and offered to drive her back to the restaurant where he picked her up.  Yeh canceled the ride request through the Uber application.

They exited the freeway on Gilman drive and turned left at a green light to turn back to southbound Interstate 5.  Geffrard stopped at a second light under the freeway that was red.  As he did so, Yeh opened the door and exited the vehicle.  Geffrard left and drove southbound on Interstate 5.  He had no further contact with Yeh.

At 12:55 a.m., Yeh used the Uber application to request another ride. Mark Rycz, another Uber driver, arrived at Gilman drive at 12:58 a.m.  When

3

he arrived, he did not immediately see Yeh, so Rycz called her through the Uber application. She did not answer. When Rycz saw Yeh sitting on an embankment, he called to her, saying he was there to pick her up in response to her ride request. She did not respond or get into his vehicle, which was marked with Uber decals in the window. Instead, she walked away. After waiting a few minutes, Rycz canceled the ride request and drove away around 1:03 a.m. He did not see or interact with Yeh again.

Sometime thereafter, Yeh left Gilman Drive and traveled over four miles to Interstate 805, just south of State Route 52. Yeh's friends, who were monitoring her phone location on the Find My application, noticed her phone was stationary for about 10 minutes and then moved quickly east from the Interstate 5 and State Route 52 interchange to the State Route 52 and Interstate 805 interchange. The timing of her movements suggested she traveled by vehicle. An officer testified it would not have been possible for her to travel by foot the distance from Gilman Drive to where she was found on Interstate 805 in that time frame. There is no evidence of who transported Yeh eastbound on State Route 52.

At approximately 1:29 a.m., a witness driving east on State Route 52 saw Yeh standing on the transition ramp from State Route 52 to Interstate 805. Yeh waved her arms, approached the driver's vehicle, and asked for help. The driver pulled to the side of the ramp. He yelled to Yeh to get off the road and to follow him to an emergency lane on Interstate 805.

After parking in the emergency lane, the driver called 911 at 1:32 a.m. Yeh was by the driver's side of the car as he placed the call, but she did not communicate with him. She appeared to be intoxicated and was stumbling around.

4

As the driver spoke with the 911 dispatcher, he saw Yeh walk into lanes of southbound traffic on Interstate 805 where she was struck by two cars. Yeh was pronounced dead at the scene.

B. *Procedural Background*

McGarry sued Uber. The operative third amended complaint alleged causes of action against Uber for (1) negligence based on a common carrier theory, (2) negligent hiring, supervision, training, and retention, (3) intentional misrepresentation, (4) negligent misrepresentation, (5) violations of the Bane Act (Civ. Code, § 52.1), (6) survivorship, (7) wrongful death, (8) unfair business practices (Bus. & Prof. Code, § 17200 et seq.), and (9) declaratory relief.

Uber generally denied all allegations and asserted affirmative defenses, including lack of causation and intervening and superseding causes. The court sustained without leave to amend Uber's demurrer to the causes of action for intentional and negligent misrepresentation.

Uber moved for summary judgment contending all remaining causes of action failed as a matter of law for absence of causation.

McGarry opposed the motion contending Uber owed Yeh a heightened duty of care as a common carrier and triable issues of fact existed regarding whether Yeh's death was a natural and probable consequence of the negligent actions of Uber and its drivers. McGarry also contended reasonable inferences could be made from the evidence that Geffrard forced Yeh to get out of his vehicle because she vomited in the car and that his wrongful ejectment resulted in her death.

The trial court granted summary judgment for Uber. The court concluded McGarry could not prevail on her negligence causes of action as a matter of law. Yeh's departure from Gilman Drive (the alleged place of

5

danger), traveling four miles to another freeway interchange, walking into freeway traffic, and being struck by two separate vehicles were intervening events that were too remote to support a finding that her death was foreseeable or a proximate cause of any action or omission by Uber or its drivers.  For the same reason, the court concluded there was no causation between Yeh's death and the alleged unfair business practice of failing to "spend the necessary means to provide adequate training and supervision."

The court also concluded McGarry failed to present a triable issue of material fact as to whether either driver subjected Yeh to conduct prohibited by the Bane Act, i.e. preventing Yeh by threat, intimidation, or coercion from doing something she had the right to do.  The court concluded it was not reasonable to infer from the evidence presented that Geffrard ejected Yeh from his vehicle by force or intimidation because she vomited in his car.  And McGarry offered no evidence to dispute Rycz's testimony that Yeh walked away from his vehicle when he arrived in response to her ride request.

Finally, the court concluded the statutory wrongful death and survivor claims are not the proper subject for the equitable remedy of declaratory relief and, absent any viable cause of action, both the survivor and wrongful death actions failed as a matter of law.

The court entered judgment in favor of Uber.  McGarry appealed.[3]

DISCUSSION

I.

*Summary Judgment Standard of Review*

The trial court must grant summary judgment when the moving party establishes it is entitled to the entry of judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A defendant may make this showing by demonstrating that the plaintiff cannot establish one or more elements of each of her causes of action.  (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 466.)

We review summary judgments de novo.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)  We independently assess " 'the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' "  (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143.)

" 'On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.] . . . "[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues.  As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out

---

[3]     McGarry did not oppose Uber's summary judgment motion for causes of action based on unfair competition, survivorship, wrongful death and declaratory relief.  Nor does McGarry's opening brief challenge the trial court's order summarily adjudicating these issues.  We, therefore, deem these issues forfeited and do not address them.  (*Gray v. La Salle Bank, N.A.* (2023) 95 Cal.App.5th 932, 975, fn. 28.)

the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed." ' " (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.)

II.

*Lack of Legal Causation for Negligence*

McGarry's negligence claims against Uber were for vicarious liability based on the conduct of Uber's drivers and for Uber's direct liability based on negligent hiring, retention or supervision of the drivers. McGarry primarily challenges the court's determination that Uber was entitled to judgment on these claims because she could not establish the necessary element of causation.[4]

A.    *General Principles*

It is well established that an essential element of any negligence claim is whether an alleged breach of duty was the proximate or legal cause of a resulting injury. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917; 6 Witkin, Summary of Cal. Law (11th ed. 2025) Torts, § 961.) This is true for claims of negligent hiring, retention or supervision (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 876; *Phillips v. TLC Plumbing Inc.* (2009) 172 Cal.App.4th 1133, 1140 [liability is limited by basic tort principles, including " 'some nexus or causal connection between the

---

[4]    For purposes of summary judgment, Uber did not dispute the issue of duty. We assume, without deciding, the Uber drivers could or should have done more to try to safeguard Yeh when she got out of the first vehicle and she declined to respond to the second. We do not reach, therefore, the issue of whether Uber should be held to a higher standard of care as a common carrier (which it denies), because it is not relevant to the causation issue on appeal.

principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harm suffered' ' ]) and for negligence claims based on a common carrier theory (*Sharufa v. Festival Fun Parks, LLC* (2020) 49 Cal.App.5th 493, 498, 501 [essential elements of negligence such as duty and causation of injuries apply to negligence claims against a common carrier]; see also *Churchman v. Bay Area Rapid Transit Dist.* (2019) 39 Cal.App.5th 246, 252 [common carrier liability does not apply to injuries caused by ordinary risks]). A wrongful death claimant must establish a wrongful act or neglect on the part of one or more persons caused the death of another person. (Code of Civ. Proc., § 377.60; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 390 [elements of wrongful death]; *Kumaraperu v. Feldsted* (2015) 237 Cal.App.4th 60, 68 [a wrongful death plaintiff must allege the wrongful or negligent act was a direct and proximate cause of the injury].)

Proximate cause has two components. (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 352 (*State Hospitals*).) The first is whether the alleged negligence was a cause in fact of the injury. A cause in fact, also known as "but for" causation, is a necessary antecedent of an event. (*Ibid.*) "To simply say . . . that the defendant's conduct was a necessary antecedent of the injury does not resolve the question of whether the defendant should be liable. . . . '[T]he consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would "set society on edge and fill the courts with endless litigation." ' " (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 315.)

9

The second component, therefore, analyzes the appropriate scope or limits of liability based on public policy considerations. (*State Hospitals, supra*, 61 Cal.4th at p. 353.) This is often referred to as legal cause. In certain circumstances, " 'where the defendant's conduct is an actual cause of the harm, the defendant will nevertheless be absolved because of the manner in which the injury occurred. . . . Rules of legal cause . . . operate to relieve the defendant whose conduct is a cause in fact of the injury, where it would be considered unjust to hold him or her legally responsible.' " (*Ibid.*)

Although proximate cause is ordinarily a question of fact, it is appropriately decided as an issue of law where the facts are such that the only reasonable conclusion is the absence of causation. (*State Hospitals, supra*, 61 Cal.4th at p. 353.) California courts also decide questions about the scope of liability based on public policy reasons as an issue of law. (*Modisette v. Apple Inc.* (2018) 30 Cal.App.5th 136, 154 citing *Mosley v. Arden Farms Co.* (1945) 26 Cal.2d 213, 222–223 (conc. opn. of Traynor, J.) (*Mosley*); *Maupin v. Widling* (1987) 192 Cal.App.3d 568, 573 [determination of actual cause is a question of fact, but the scope of a defendant's liability is a question of law and social policy].)

The legal issue before us is whether McGarry's death from being struck by two vehicles on a freeway interchange that was miles from where she was left by the Uber drivers was within the scope of risk from Uber's conduct based on public policy considerations. (*Mosley, supra,* 26 Cal.2d at p. 223.) We conclude it was not.

" 'An actor's liability is limited to those harms that result from the risks that made the actor's conduct tortious.' " (6 Witkin, Summary of Cal. Law (11th ed. 2026) Torts, § 1336, quoting Rest.3d Torts: Liability or Physical and Emotional Harm, § 29.) In other words, the harm suffered by the plaintiff

10

must be "within the scope of risk" of the defendant's conduct. This is referred to as the risk standard. (*Ibid.*)

California courts apply the risk standard to limit liability as a matter of law when an injury is only distantly connected to the defendant's conduct. (*Shih v. Starbucks Corp.* (2020) 53 Cal.App.5th 1063, 1070 [applying scope of risk standard to preclude liability when injury from losing balance on a chair and knocking a hot drink off the table was not within the scope of risk created by serving a hot beverage without a sleeve]; *Novak v. Continental Tire North America* (2018) 22 Cal.App.5th 189, 197–198 [tire manufacturer responsible for a vehicle accident found not liable for the disabled driver's death from a second accident years later on a scooter the driver used after the vehicle accident].)

McGarry contends Uber's conduct in leaving Yeh at Gilman Drive included a general risk that she could walk into traffic and be struck by a vehicle. Therefore, she argues, being struck by two vehicles on a freeway several miles away from where Yeh was dropped off should be considered within the general range of harm arising from Uber's negligent conduct. We disagree.

This is unlike *Ingahm v. Luxor Cab Co.* (2001) 93 Cal.App.4th 1045 (*Ingahm*), a case relied upon by McGarry. In *Ingahm*, a cab driver told a physically unstable woman to get out of the cab two blocks from her destination at a dental clinic and in an area that required her to walk up a hill, despite her pleas to take her further due to her condition. As she tried to walk the remainder of the way, she fell and injured herself. (*Id.* at pp. 1047–1048.) Although the appellate court did not expressly analyze the case through the risk standard lens, it is apparent the risk of a fall while walking is within the range of harm that could result from a cab driver negligently

11

ejecting a physically unstable passenger from a cab two blocks away from her destination. Because there was a factual question about whether the woman was harmed as the result of her own actions or those of the cab driver, the appellate court concluded the matter was appropriately an issue for a jury. (*Id.* at pp. 1054–1055.)

Here, in contrast, Yeh was not injured within the range of risks associated with any negligence in leaving her at the Gilman Drive location. There was undisputed evidence that the first Uber driver did not allow Yeh to get out of the vehicle when she asked while they were on the freeway. Had he allowed her to get out of the car on the freeway, the scope of risk could have included the risk of injury from walking into freeway traffic. But that did not happen.

When Yeh exited the vehicle, for whatever reason, they were off the freeway on a relatively safe street away from busy traffic and she had her phone. Both drivers testified they saw no cars in the area. Had Yeh suffered an injury like Ingahm from a fall due to lighting or other characteristics of the Gilman Drive location while trying to walk elsewhere, perhaps that could have been within the scope of risk created by Uber. But the scope of risk associated with any negligent conduct from leaving her in this location cannot be stretched so far as to include being struck by vehicles on a different freeway several miles away.

McGarry nevertheless contends the range of harm from Uber's conduct should include the risk that a bad actor could have picked up Yeh, could have transported her several miles away to another freeway interchange, and could have left her on the side of the freeway where she could wander into traffic and be struck by vehicles. This is a speculative bridge built too far on too many "could haves." (*Kim v. Uber Technologies, Inc.* (2024)

105 Cal.App.5th 252, 258; *Shih v. Starbucks Corp., supra,* 53 Cal.App.5th at p. 1070; see also *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 781 [speculation regarding causation is too tenuous to create a triable issue of fact].)

As the trial court noted, this case bears some similarities to the case of *Lammers v. Pacific E.R. Co.* (1921) 186 Cal. 379 (*Lammers*), where an intoxicated train passenger was ejected from a train and was injured hours later by another passing train three quarters of a mile away from where he was ejected from the first train. (*Id.* at pp. 383–384.) In this legal chestnut, the Supreme Court concluded any negligence in ejecting the passenger was not the legal cause of his injuries because "however dangerous the point of his ejection may have been, plaintiff immediately left the tracks of the defendant railway and entered a ditch." (*Id.* at p. 384.) If he had "succeeded in getting on one of the numerous streets and highways in the vicinity and been injured by a passing automobile, it would hardly be contended that the injury was the proximate result of the ejection." (*Ibid.*)

The sad truth is that no one knows how Yeh made her way from Gilman to Interstate 805 where she died. As in *Lammers*, no matter how intoxicated Yeh was, she "was entitled to go wherever [she] pleased." Her death was not within the scope of risk because she left a place of relative safety and made her way to another place of danger. Also as in *Lammers*, "[t]here is no more reason for holding the defendant liable for the injury in this case than there would be had the plaintiff wandered into some neighboring yard and been shot as a burglar." (*Lammers, supra,* 186 Cal. at p. 384.)

It would be an unwarranted extension of liability to hold Uber responsible for consequences created by either negligent or intentional

conduct of an unknown individual, whether a bad actor or a good Samaritan, in transporting Yeh from Gilman Drive to the interchange of State Route 56 and Interstate 805. " '[L]egal responsibility must be limited to those causes which are so close to the result, or of such significance as causes, that the law is justified in making the defendant pay.' " (*Kumaraperu v. Feldsted, supra*, 237 Cal.App.4th at p. 68.) This is not such a case. The gap between any negligence of Uber and its drivers in leaving Yeh at Gilman Drive and her tragic death on a freeway miles away is too attenuated to hold Uber responsible. (*Modisette v. Apple Inc., supra*, 30 Cal.App.5th at p. 155.) To hold otherwise would require rideshare companies such as Uber to act as an insurer for any harm suffered by a passenger who departs a ride anywhere other than the originally requested destination. Public policy cannot and does not compel such a result. The court properly granted summary judgment on the negligence causes of action for lack of legal cause.

III.

*Summary Judgment Was Proper for the Bane Act Cause of Action*

" 'The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.' " (*Shoyoye v. Cty. of Los Angeles* (2012) 203 Cal.App.4th 947, 955–956.)

McGarry did not dispute the Bane Act claim against Uber was based on Geffrard's conduct. Uber presented evidence that Yeh, not Geffrard, cancelled her ride request through her application. Geffrard did not order Yeh out of the vehicle or refuse to transport her. Instead, he offered to drive

14

her back to where he picked her up. She exited the vehicle while he was stopped at a red light.

McGarry purported to dispute these facts in opposition to the separate statement, but McGarry presented no contrary evidence. Instead, for each material fact on the issue of the Bane Act, she included a statement that "reasonable inferences" could be made that Geffrard "ejected" Yeh from the vehicle because she vomited in the vehicle, which required him to end his driving night early. McGarry stated Yeh's call for a second Uber ride "clearly suggests" she was "forced out of the car."[5]

The trial court concluded that McGarry failed to raise a triable issue of fact as to the Bane Act and it was not reasonable to infer from the undisputed evidence presented that Geffrard ejected Yeh from his vehicle by means of force, threat, or intimidation simply because she vomited in his car and he could not continue driving that night.

On appeal, under a catchall heading saying "Plaintiff's remaining claims were improbably [sic] adjudicated on summary judgment," McGarry includes one paragaph at the end of her brief on the Bane Act simply saying the court improperly found Geffrard's testimony credible "despite evidence and opposition from the plaintiff." This includes one citation to the trial court's ruling and no authority. This does not comply with the spirit of California Rules of Court, rule 8.204, which requires each brief to state each point under a separate heading or subheading summarizing the point, and support each point by argument, by citation of authority, and reference to the

_____

[5]     McGarry's response statements to the material facts she "disputed" failed to comply with the statutory requirement to refer to supporting evidence. (Code Civ. Proc., § 437c, subd. (b)(3).) Therefore, the court had discretion to grant the motion. (*Ibid.*)

15

record.  (Cal. Rules of Court, rule 8.204(a).)  Therefore, we could deem the issue forfeited for failure to adequately brief the issue.  (*Bains v. Moores, supra*, 172 Cal.App.4th at p. 455.)

Nevertheless, we address the merits briefly.  The trial court correctly observed McGarry did not present evidence supporting the claim that Geffrard violated the Bane Act.  Instead, she claimed, without evidence, that Geffrard's testimony was not truthful and it was reasonable to "infer" he ejected her from the car by force or threat because he had to clean his car.  The court's determination that it was not reasonable to draw such inferences from the evidence did not amount to a credibility determination.  Rather the court concluded that McGarry's argument was not reasonable because it was based on speculation.

" ' "Speculation . . . is not evidence" that can be utilized in opposing a motion for summary judgment.' [Citation.]  Speculation also differs from a reasonable inference.  'When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.' (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161.)" (*Advent, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA* (2016) 6 Cal.App.5th 443, 459.)  We agree the inferences McGarry seeks to draw are based on speculation, not reasonable deduction from the evidence.  Therefore, the trial court properly granted summary judgment as to the Bane Act allegations.

16

## DISPOSITION

The judgment in favor of Uber is affirmed.  Respondents are entitled to their costs on appeal.

McCONNELL, P. J.

WE CONCUR:


DO, J.


KELETY, J.