Filed 12/29/15  Goodwin v. Pagano CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRANK GOODWIN,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>JAMES PAGANO et al.,<br><br>  Defendants and Respondents. | B254135<br><br>(Los Angeles County<br>Super. Ct. No. BC515952) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Brian M. Hoffstadt, Judge.  Appeal dismissed as to defendant Khalife.  The judgments are affirmed as to all other defendants.

Frank Goodwin, in pro. per., for Plaintiff and Appellant.

Bonne, Bridges, Mueller, O'Keefe & Nichols, Carmen Vigil, David J. O'Keefe and Mitzie L. Dobson for Defendants and Respondents James Pagano, M.D., and Mohammed Khalife, M.D.

Reback, McAndrews, Kjar, Warford, Stockalper & Moore, Robert C. Reback and David J. Rubaum for Defendant and Respondent Zouhair Hakak, M.D.

Davis, Grass, Goldstein & Finlay, Campbell H. Finlay and Richard V. Zavala for Defendant and Respondent Prime Healthcare Services-San Dimas, LLC. dba San Dimas Community Hospital.

La Follette, Johnson, De Haas, Fesler & Ames, Marissa A. Warren and David J. Ozeran for Defendants and Respondents Anthony Oh, M.D., and Christopher Cannon.

—————————————

In this medical malpractice action, plaintiff Frank Goodwin appeals the trial court's judgments sustaining the demurrers of defendants Prime Healthcare Services-San Dimas, LLC, dba San Dimas Community Hospital (hereinafter, the Hospital), doctors Anthony Oh, James Pagano, Zouhair Hakak, and Mohammed Khalife, and attorney Christopher Cannon, and granting Oh's and Cannon's special motions to strike (anti-SLAPP motions). We dismiss the appeal as to defendant Khalife, and affirm the judgments as to the other defendants.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*

Because this matter comes to us following a judgment sustaining demurrers without leave to amend, we set forth the facts as alleged in Goodwin's operative complaint, filed July 22, 2013. (*Stine v. Dell'Osso* (2014) 230 Cal.App.4th 834, 838; *Nasrawi v. Buck Consultants LLC* (2014) 231 Cal.App.4th 328, 333, fn.1.)

On October 3, 2010, Goodwin sought treatment at the Hospital after a foreign body became lodged in his colon. Prior to seeking treatment, Goodwin conducted research and believed that the object could be successfully removed by means of a colonoscopy. At the Hospital, Goodwin told Doctors Pagano and Hakak that he wanted the object removed via a colonoscopy. Both doctors promised to find a gastroenterologist who could perform that procedure. However, Hakak and Pagano instead contacted Dr. Oh, a surgeon, who did not perform colonoscopies. Oh decided to perform abdominal surgery on Goodwin because this would make more money for him and the Hospital.

On October 4, 2010, Goodwin consented to a colonoscopy, but did not consent to general anesthesia, rigid proctosigmoidoscopy, exploratory laparotomy, or a colostomy. Nonetheless, instead of performing the promised colonoscopy procedure, doctors Oh, Pagano, Hakak, and Khalife "planned and performed" these procedures to remove the

2

object.  When Goodwin awoke after the surgery and realized his "abdomen was cut," he became "very angry about it."  He was discharged from the Hospital on October 9, 2010.

On December 1, 2010, Goodwin was hospitalized at Los Angeles County USC Medical Center due to extreme abdominal pain.  Doctors "opened his abdomen" and discovered extensive scar tissue inside his "small bowel," causing a blockage.  The USC doctors removed the scar tissue in a "repair surgery."  Thereafter, Goodwin experienced "colon pains" on multiple occasions, causing him to seek treatment at various hospital emergency departments.  He has experienced ongoing stress, pain, and suffering, and has incurred additional medical expenses, as a result of the October 4 surgery.

Goodwin was unsuccessful in serving a deposition subpoena on Khalife using a licensed process server.  On August 14, 2012, Goodwin himself attempted to serve Khalife.  Khalife "outrageously hit, pushed, and grabbed" Goodwin.

2. *Procedural background*

a. *Goodwin's first action*

Prior to filing the instant action, Goodwin filed suit against the Hospital and Oh, based on the same surgery.  (*Goodwin v. San Dimas Community Hospital* (Super. Ct. L.A. County, 2014, No. KC062033).)  That complaint was filed on September 6, 2011, while Goodwin was represented by counsel.  The complaint in KC062033 asserted two causes of action: (1) professional negligence, and (2) medical battery.  Goodwin alleged that the Hospital and Oh were negligent in regard to treatment rendered to him for "a foreign body in colon, resulting in various injuries and damages," and committed medical battery by performing an exploratory laparotomy to which Goodwin had not consented.

During the pendency of the KC062033 action, a dispute arose between Oh and Goodwin regarding the conduct of Oh's deposition.[1]

After the second cause of action for medical battery was dismissed as against Oh, Oh moved for summary judgment on the remaining cause of action for professional negligence.  His motion was supported by the declarations of two medical experts, who

---

[1]    This issue will be discussed more fully where relevant *post.*

3

opined that Oh had complied with the standard of care. On September 5, 2012, the trial court granted the summary judgment motion on the ground that Oh had established there had been no violation of the standard of care. The court entered judgment in Oh's favor on January 16, 2013, and awarded costs of suit to Oh.

On September 25, 2012, Goodwin, represented by a new attorney, dismissed the Hospital from the suit without prejudice. On October 11, 2012, Goodwin's attorney filed a form dismissing the Hospital with prejudice. Thereafter, Goodwin moved to set aside the dismissal; his motion was denied.[2]

Goodwin appealed. We dismissed the appeal on January 30, 2014. (*Goodwin v. Oh* (Jan. 30, 2014, B250043.) On March 3, 2014, we denied Goodwin's petition for reconsideration and rehearing. The California Supreme Court denied Goodwin's petition for review on April 16, 2014. (*Goodwin v. Oh* (Apr. 16, 2014, S217024.)

b. *The operative complaint and the trial court's rulings in the instant matter*

On July 22, 2013, Goodwin filed the complaint in the instant matter, Los Angeles County Superior Court case No. BC515952. It alleged 12 causes of action arising out of the October 4, 2010 surgery: false promise, intentional misrepresentation, negligent misrepresentation, and concealment against the Hospital and doctors Pagano, Hakak, and Oh; conspiracy, medical battery, failure to obtain informed consent, "violation of 42 CFR 482.13(b)(2)," "violation of 42 CFR 482.51(b)(2)," and negligence against the Hospital and doctors Pagano, Hakak, Khalife, and Oh; battery, against Khalife only; and "violation of Los Angeles Superior Court Rule 3.26 Appendix 3.A(e)(8)" against Oh and Oh's attorney, Cannon.

---

[2] On October 3, 2012, Goodwin, in pro. per., filed a new complaint against Oh in San Bernardino Superior Court. That action was dismissed for lack of prosecution on March 8, 2013, and is not at issue here.

4

All defendants demurred to the complaint on various grounds. Oh and Cannon additionally filed special motions to strike the 12th cause of action for purported violation of the court rule (the anti-SLAPP motions). (Code Civ. Proc., § 425.16.)[3]

The trial court ruled as follows. As to Hakak, Oh, Pagano, and the Hospital, it sustained the demurrers without leave to amend. The court reasoned that the first through 10th causes of action were time barred under section 340.5, which sets forth the statute of limitations for medical malpractice actions. Goodwin was aware on October 4, 2010 that Dr. Oh had performed a different procedure than that which Goodwin had authorized, and he knew as of December 1, 2010, that the surgery had caused injury. Therefore, the complaint was filed well after the one-year limitations period had run. Goodwin's discovery of additional damages in September 2013 did not toll or extend the limitations period. Although the first through ninth causes of action were pled under different labels, the gravamen of all the claims was medical negligence. To the extent the sixth and seventh causes of action alleged battery, they were nonetheless barred by the two-year statute of limitations in section 335.1. The federal regulations cited as the basis for the eighth and ninth claims (42 C.F.R. §§ 482.13, 482.51) were likewise based on negligence, and in any event did not give rise to a private right of action.

The trial court further concluded that as to the Hospital, the complaint was barred by the doctrines of res judicata and collateral estoppel. It found Oh's motion to strike the complaint as barred by these doctrines was moot in light of the court's ruling on the demurrer.

The court sustained both Oh's and Cannon's demurrers without leave to amend on the 12th cause of action, on the grounds (1) it was barred by the litigation privilege; (2) violation of a local court rule does not give rise to a private right of action; and (3) the court rule at issue was advisory rather than mandatory. It granted Oh's and Cannon's anti-SLAPP motions on the ground an attorney's advice to a client during a deposition falls within the ambit of section 425.16, subdivision (e)(1), and Goodwin could not

---

**3** All further undesignated statutory references are to the Code of Civil Procedure.

establish a probability of prevailing on his claim. The court granted Oh's and Cannon's motions for attorney fees.

The trial court sustained Khalife's demurrer without leave to amend on six of the seven causes of action alleged against him on statute of limitations grounds. It sustained the demurrer as to the 11th cause of action for battery with leave to amend. It subsequently overruled Khalife's demurrer to Goodwin's first amended complaint as to the 11th cause of action for battery.

Judgment of dismissal was subsequently entered for all defendants except Khalife. Goodwin appeals.

DISCUSSION

1. *Oh's and Cannon's request to dismiss the appeal*

Goodwin's notice of appeal states he is appealing from a judgment or order entered on "12/13/2013, others pending." The notice further states he is appealing "multiple sustained demurrers, anti-slapp, quash services, etc." Appended to the notice of appeal is a document captioned "Intention to Appeal." That document states Goodwin intends to "appeal all judgments, orders, rulings in favor of all defendants, James Pagano, Zouhair Hakak, Mohammed Khalife, Anthony Oh, San Dimas Community Hospital, Christopher Cannon, Does 1-50." "These judgments, orders, and rulings include but [are] not limited to judgments of dismissal after sustained demurrers, anti-slapp, quash service, etc. Some of them have been signed and entered by trial court, some are not. For all that have not be[en] signed and entered by trial court, I will supplement them at a later time."

Oh and Cannon argue that their demurrers and anti-SLAPP motions were heard and granted on December 2 and December 12, 2013, and orders of dismissal were entered on January 13, 2014; therefore, the notice of appeal does not pertain to the judgments entered in their favor. Furthermore, they urge that the notice of appeal fails to adequately specify the orders and/or judgments at issue, but instead "lumps them all together." The notice is therefore so nonspecific that it is invalid, and the appeal should be dismissed as to them.

6

" '[I]t is, and has been, the law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' [Citations.] A notice of appeal 'is sufficient if it identifies the particular judgment or order being appealed.' (Rule 8.100(a)(2).)" (*In re Joshua S.* (2007) 41 Cal.4th 261, 272; *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18.) Insofar as it pertains to respondents' demurrers and the anti-SLAPP motions brought by Oh and Cannon, Goodwin's notice of appeal is reasonably clear.[4] Respondents do not appear to have been misled, as demonstrated by the ease with which they have identified the pertinent issues in their briefing. The notice lists the wrong date, but this apparent typographical error is not fatal. (See generally *Ellis Law Group, LLP v. Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244, 250-251 [notice of appeal sufficient although the wrong box was checked on the notice of appeal form, misidentifying the statutory basis for the appeal].)

2. *Consideration of rulings made in the first action*

Goodwin argues that a variety of rulings made in his *first* action, No. KC062033, were erroneous. Among other things, he purports to challenge the trial court's orders dismissing the second cause of action for medical battery; granting Cannon's and Oh's motions for a protective order; denying his motion for sanctions against Cannon; denying his motion for leave to file a first amended complaint; denying his motion to set aside the dismissal of the Hospital with prejudice; granting Oh's motion for summary judgment; and denying his motion to set aside the summary judgment. He requests that this court order that the judgment in favor of Oh in No. KC062033 be vacated "because [the] trial court made so many errors," and because he has allegedly discovered that Oh "conducted

---

**4** However, we agree with respondents that, to the extent the notice of appeal purports to encompass "quash services" or other unspecified orders, it is too nonspecific and vague to alert the parties to the particular order or judgment at issue. Goodwin's briefing does not appear to specifically challenge other orders made in case No. BC515952.

7

fraud." Goodwin also argues that this court erred by dismissing his appeal in the first action.

None of these claims are cognizable at this juncture. "A judgment is the final determination of the rights of the parties." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697 (*Griset*); § 577.) The final judgments in KC062033 as to both Oh and the Hospital were appealed to this court in case No. B250043. We dismissed the appeal, the California Supreme Court denied review, and the remittitur issued on April 24, 2014. Once it became final, our disposition terminated the litigation in KC062033 as to Oh and the Hospital. (See *Griset, supra,* at p. 702.) Consideration of rulings made in the first case would amount to allowing a second appeal of that case, which we lack authority to entertain. (See generally *Griset, supra,* at p. 702.) Accordingly, we do not consider Goodwin's arguments regarding rulings made in the first action.

3. *Because this court lacks jurisdiction over Goodwin's appeal as to defendant Khalife, the appeal must be dismissed as to him.*

Khalife argues, correctly, that this court lacks jurisdiction to entertain Goodwin's appeal as to him because there is no final judgment disposing of all causes of action alleged against him. As noted, the trial court sustained Khalife's demurrer to the fifth through 10th causes of action without leave to amend, but overruled his demurrer as to the 11th cause of action for battery, which allegedly arose not from the October 2010 surgery, but from a separate incident in which Khalife allegedly battered Goodwin when Goodwin attempted to serve him with a subpoena.

The right to appeal is statutory, and a reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order, or (2) an appealable judgment. (*Griset, supra,* 25 Cal.4th at p. 696; *Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 645.) Where such jurisdiction is lacking, a reviewing court has " 'the duty to dismiss such an appeal upon its own motion.' " (*In re Mario C.* (2004) 124 Cal.App.4th 1303, 1307.)

It is a "fundamental principle of appellate practice" that review of intermediate rulings by appeal is prohibited until there is a final resolution of the case. (*Griset, supra,*

8

25 Cal.4th at p. 697.)  An order sustaining a demurrer is interlocutory and not appealable; instead, it is reviewable on appeal from the judgment.  (*Walker v. Los Angeles County Metropolitan Transportation Authority, supra,* 35 Cal.4th at p. 20; *Lopez v. Brown* (2013) 217 Cal.App.4th 1114, 1132; *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 278.)  Here, the trial court sustained Khalife's demurrer to less than all of Goodwin's claims; its rulings did not dispose of all causes of action between the parties.  An appeal " 'cannot be taken from a judgment that fails to complete the disposition of all causes of action between the parties . . . .' " (*Griset, supra,* at p. 697.)  Accordingly, we dismiss Goodwin's appeal insofar as it pertains to Khalife.  (See *Griset, supra,* at p. 697.)

    4.  *The demurrers to the first through 10th causes of action*

    a.  *Standard of review*

We independently review the trial court's rulings on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action.  (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.)  " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Kumaraperu v. Feldsted* (2015) 237 Cal.App.4th 60, 65.)  When a demurrer is sustained without leave to amend, we determine whether there is a reasonable possibility the defect can be cured by amendment.  If not, there has been no abuse of discretion and we affirm.  The plaintiff has the burden of proving such a reasonable possibility.  (*Blank v. Kirwan, supra,* at p. 318; *Kumaraperu v. Feldsted, supra,* at pp. 65-66; *Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 871.)  We must affirm if any one of the grounds supporting the demurrer is well taken.  (*Guerrero v. Pacific Gas & Electric Co.* (2014) 230 Cal.App.4th 567, 571.)  " 'In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint.' " (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 342 (*Larson*).)

b. *Goodwin's first through 10th causes of action are time-barred.*

Pursuant to section 340.5, a medical malpractice action must be commenced within one year after the patient discovers, or reasonably should have discovered, his injury. (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 895; *Davis v. Marin* (2000) 80 Cal.App.4th 380, 385.) Section 340.5 provides in pertinent part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." The limitations period begins to run when the plaintiff suspects, or should reasonably suspect, that his injury was caused by wrongdoing. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397-398; *Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391.) The term "injury," as used in section 340.5, means both a person's physical condition and its negligent cause. (*Gutierrez, supra*, at p. 896; *Knowles v. Superior Court* (2004) 118 Cal.App.4th 1290, 1295; *Davis v. Marin, supra,* at p. 385.)

Section 335.1 sets forth the applicable statute of limitations for battery. It provides in pertinent part that an "action for assault, battery, or injury to . . . an individual caused by the wrongful act or neglect of another" is two years. (§ 335.1.)

The allegations of Goodwin's complaint establish that he was well aware of the wrongdoing by defendants at least by December 1, 2010. Goodwin alleges he became aware of the fact Oh had performed abdominal surgery, rather than the colonoscopy Goodwin expected, when he awoke and discovered the abdominal incision. The complaint further avers that on December 1, 2010, Goodwin learned from doctors at another facility that his bowel had "extensive scar tissues" which had caused an intestinal blockage. Thus, Goodwin admittedly knew defendants had " 'done something wrong' " in regard to his treatment by December 1, 2010 at the latest. (See *Gutierrez v. Mofid, supra,* 39 Cal.3d at p. 897; *Knowles v. Superior Court, supra,* 118 Cal.App.4th at p. 1296.) Goodwin's causes of action thus accrued no later than December 1, 2010.

10

When determining the applicable statute of limitations, we must look to the gravamen of the claims, not the labels affixed thereto. (*Larson, supra,* 230 Cal.App.4th at pp. 340, 347; *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 412 [the "nature of the cause of action and the primary right involved, not the form or label of the cause of action . . . determine which statute of limitations applies"].) Section 340.5 defines "professional negligence" as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." "[W]hen a plaintiff asserts a claim against a health care provider on a legal theory other than professional negligence, courts must determine whether the claim is nonetheless *based on the health care provider's professional negligence,* which would require application" of section 340.5. (*Larson, supra,* at p. 347; see also *Carter, supra,* at pp. 412-413; *Smith v. Ben Bennett, Inc.* (2005) 133 Cal.App.4th 1507, 1514.)

A healthcare provider's failure to obtain informed consent is negligence, as is the failure to disclose pertinent information regarding treatment. (*Cobbs v. Grant* (1972) 8 Cal.3d 229, 240-241.) A "medical act performed without a patient's informed consent . . . is medical negligence . . . ." (*Massey v. Mercy Medical Center Redding* (2009) 180 Cal.App.4th 690, 698.) "Where a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not obtained, there is a clear case of battery." (*Cobbs v. Grant, supra,* at p. 239; *Perry v. Shaw* (2001) 88 Cal.App.4th 658, 664 [doctor who performed breast enlargement to which patient had not consented "committed a battery"]; but see *Gutierrez v. Mofid, supra,* 39 Cal.3d at pp. 895-896, 902 [applying § 340.5's one-year limitations period for negligence where the plaintiff consented to an exploratory operation to remove her appendix or a tumor, but doctors did a complete hysterectomy].)

11

Applying these principles, it is clear the gravamen of Goodwin's first through fifth, and eighth through 10th, causes of action is professional negligence, while the gravamen of his sixth and seventh causes of action is either negligence or battery.

Goodwin's 10th cause of action is expressly pled as negligence. He alleges defendants failed to: use reasonable care in treating and diagnosing him; obtain informed consent or ascertain his wishes; assure staff competence; maintain accurate and complete medical records; and "guard against employee medical incompetence, negligence and misconduct." His third cause of action is expressly pled as "negligent misrepresentation." It is premised on the claim that defendants negligently stated they would refer a gastroenterologist to perform a colonoscopy, but instead referred Oh to perform a laparotomy.

The eighth and ninth causes of action, purportedly based on violations of 42 Code of Federal Regulations sections 482.13(b)(2) and 482.51(b)(2),[5] allege that defendants deprived Goodwin of his right to make informed decisions regarding his care by failing to provide or disclose information about the procedures that were eventually performed, and by failing to obtain informed consent and properly file such consent in his chart prior to surgery. Indeed, Goodwin appears to recognize that these claims are for negligence, as he refers to the seventh through 10th causes of action as "medical negligence causes of action."

The first and second causes of action, for false promise and intentional misrepresentation respectively, allege that defendants promised to refer a gastroenterologist to perform a colonoscopy, but did not intend to keep their word and instead referred surgeon Oh, who performed the laparotomy and related procedures. The fourth cause of action for concealment alleges that defendants concealed or failed to

---

[5]    These sections of the Code of Federal Regulations pertain to a hospital's protection and promotion of patient rights, including, among other things, a patient's right to participate in the development and implementation of his or her plan of care, and the requirement that a properly executed informed consent form must be in the patient's chart prior to non-emergency surgery.

12

disclose the plan to perform surgery rather than the colonoscopy.  The fifth cause of action alleges defendants conspired to perpetrate a fraud on Goodwin by falsely telling him a colonoscopy would be performed, whereas abdominal surgery was planned and performed.

All these causes of action were premised on the allegation that the defendants led Goodwin to believe he would undergo a colonoscopy rather than a laparotomy.  The nucleus of each of these claims is that defendants negligently failed to provide Goodwin with relevant information and obtain his informed consent.  Each cause of action therefore sounds in negligence, and is subject to the one-year limitations period contained in section 340.5.  (*Cobbs v. Grant, supra,* 8 Cal.3d at p. 240;  see also *Larson, supra,* 230 Cal.App.4th at p. 342.)  Because Goodwin's complaint in the instant action was not filed until July 22, 2013, well past the date the one-year limitations period had run, these causes of action are time-barred.

The sixth and seventh causes of action for medical battery and failure to obtain informed consent allege that defendants performed medical procedures, including a laparotomy and colostomy, without Goodwin's consent.  Assuming these causes of action plead battery, rather than negligence (see *Cobbs v. Grant, supra,* 8 Cal.3d at p. 239; *Perry v. Shaw, supra,* 88 Cal.App.4th at p. 664), they are subject to the two-year statute of limitations set forth by section 335.1.  Because the claims accrued no later than December 1, 2010, and the complaint was not filed until July 22, 2013, they are time-barred.

Goodwin argues that the first through fifth causes of action should be subject to the three-year limitations period for fraud.  (§ 338, subd. (d).)  He argues that the trial court overlooked a "key fraud allegation" in the factual portion of the complaint, i.e., that defendants "defrauded" him by using a more expensive "surgery method" in order to make substantially more money.  That portion of the complaint states:  "Despite . . . the promise to find a gastroenterologist, [D]octor Pagano and [D]octor Hakak contacted a surgeon doctor Anthony Oh, who has never practiced colonoscopy to remove foreign body.  Doctor Anthony Oh wanted to take this job and use surgery method to remove the

13

foreign body, which could generate[] about $10,000 alone for himself. The Hospital could also make more than $60,000 from surgery. By comparison, the colonoscopy method could only bring in $500 to $2000 overall income for doctors and hospital."

Defendants point to *Tell v. Taylor* (1961) 191 Cal.App.2d 266, in support of their contention that the gravamen of these causes of action is negligence, not fraud. In *Tell*, a plaintiff asserted causes of action for malpractice and deceit against a doctor who assured her, incorrectly, that she would sustain no permanent injury from a fall. In holding both causes of action barred by the one-year statute of limitations, rather than the three-year limit for fraud, the court explained: "appellant has cited no authority in this state or elsewhere to indicate that it is possible to extend the statute of limitations in a personal injury action by bringing it on a theory of fraud. Rather, even though the plaintiff alleges false representations on the part of the physician or fraudulent concealment, our courts have always treated the action as one for malpractice." (*Id.* at p. 271.)

In *Weinstock v. Eissler* (1964) 224 Cal.App.2d 212, the plaintiff alleged he had consented to a cerebral angiogram but not to a spinal tap; nonetheless, the doctors performed both procedures, causing injury. The doctors allegedly failed to disclose the spinal tap or note it in the medical records in order to conceal their negligence. (*Id.* at pp. 217-220.) The plaintiff asserted causes of action for, inter alia, deceit. In considering whether the action was time-barred, the court stated: "The one-year statute of limitations is applicable even where, as here, the plaintiff-patient alleges a cause of action for deceit based on the physician's false representations or fraudulent concealment of the nature and extent of the injury. Such a cause of action has always been treated as one for malpractice." (*Id.* at p. 227.)

Goodwin cites *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, in support of his argument. In *Nelson,* the plaintiff sought elective breast augmentation surgery from the defendant doctor. She alleged that he committed intentional fraud by injecting her with silicone without telling her that he was doing so, and without mentioning that the procedure was illegal. He had been arrested a few months earlier for the same practice. (*Id.* at p. 629.) *Nelson* recognized that generally, in pleading a cause of action for injuries

14

resulting from a procedure that was performed without sufficient information for knowledgeable consent, either a negligence or battery theory applied. (*Id.* at p. 634.) However, in the "more egregious situation" in *Nelson,* a "fraud theory [was] apposite." (*Id.* at p. 635.) "[W]here, as here, a physician knowingly and intentionally represents that he can administer safely a substance that, in fact, can be administered only under restrictions and controls of state or federal authority, and he administers that substance without the requisite permit and without informing the patient of the restrictions and dangers, the patient can maintain an action for fraud as well as malpractice. Under these circumstances, a physician, like any other fiduciary, is liable for his fraudulent conduct." (*Id.* at p. 636.)

Nelson v. Gaunt* is distinguishable here. *Nelson* did not disagree with *Tell v. Taylor,* but found it inapplicable where the doctor's actions were "more egregious" than the typical case. (*Nelson v. Gaunt, supra,* 125 Cal.App.3d at p. 635.) Unlike in *Nelson,* there is no allegation the defendants engaged in unlicensed conduct or used illegal substances; Dr. Oh performed surgery, a legal medical procedure, to effectuate the result that Goodwin sought, removal of the foreign object from his colon. Recasting the claim as fraud does not change the gravamen of the claim.

Goodwin also argues that his causes of action are not time barred because he discovered a "new second distinct injury" on September 5, 2013. Goodwin stated in his briefing below that an X-ray taken on September 5, 2013 revealed that segments of his sigmoid colon "had stuck and overlapped," and adhesions had formed around the colon, requiring further surgery. He argued below that if the demurrer was sustained, he should be allowed to amend, presumably to allege these facts. Goodwin urges that this new injury was neither suspected nor discovered until September 5, 2013, and involved different organs and different diseases. Therefore his complaint, at least insofar as it pertains to this injury, is not time barred, in that there are "[t]wo distinct injuries, two primary rights, and two statute of limitation periods."

Again, we disagree. "A malpractice action may not be pursued piecemeal. ' "As a general rule, where an injury, although slight, is sustained in consequence of the wrongful

15

act of another, . . . the statute of limitations attaches at once.  It is not material that all the damages [resulting] from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. . . .” ’  [Citation.]  ‘The long-standing rule in California is that a single tort can be the foundation for but one claim for damages.  [Citation.]  Accordingly, if the statute of limitations bars an action based upon harm immediately caused by defendant’s wrongdoing, a separate cause of action based on a subsequent harm arising from that wrongdoing would normally amount to splitting a cause of action.’  [Citation.]” (*Bennett v. Shahhal* (1999) 75 Cal.App.4th 384, 391-392; *Miller v. Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1622; *Sonbergh v. MacQuarrie* (1952) 112 Cal.App.2d 771, 773.)

Goodwin’s citations to *Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, and *Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, are unavailing.  In *Pooshs,* the plaintiff, a cigarette smoker, was diagnosed, at different times, with periodontal disease, COPD, and lung cancer.  The issue before our Supreme Court was the following:  “ ‘When multiple distinct personal injuries allegedly arise from smoking tobacco, does the earliest injury trigger the statute of limitations for all claims, including those based on the later injury?’ ” (*Pooshs*, at p. 792.)  Resolving the question, the court reasoned:  “We hold that two physical injuries—both caused by the same tobacco use over the same period of time—can, in some circumstances, be considered ‘qualitatively different’ for purposes of determining when the applicable statute of limitations period begins to run.  [Citation.]  Specifically, when a later-discovered disease is separate and distinct from an earlier-discovered disease, the earlier disease does not trigger the statute of limitations for a lawsuit based on the later disease. . . .  We limit our holding to latent disease cases, without deciding whether the same rule should apply in other contexts.” (*Ibid.*)  Goodwin’s surgery was not a latent disease, and his injuries are not separate and distinct in the same way Pooshs’s were.  His newly discovered injuries are of the same ilk as the injuries discovered in 2010, that is, adhesions in his intestinal system.

16

In *Grisham,* the plaintiff alleged two different types of injury arising from her addiction to cigarettes: physical injuries, in the form of respitory ailments; and economic injury, in that her addiction compelled her to continue to purchase cigarettes. (*Grisham v. Philip Morris U.S.A., Inc., supra,* 40 Cal.4th at pp. 628-629.) *Grisham* did "not resolve whether and under what circumstances two different physical injuries arising out of the same wrongdoing can give rise to two separate lawsuits, or whether the two injuries in the present case can be conceived of as invading two different primary rights." (*Id.* at p. 643.) But because the plaintiff alleged two different types of injury -- "one serious physical injury or injuries, the other an economic injury"-- her allegations gave rise to "two different types of action." (*Ibid.*) Unlike in *Grisham,* Goodwin's injuries are all physical.

In sum, the demurrers to the first 10 causes of action were properly sustained without leave to amend on the ground the statute of limitations had run.[6]

c. *The doctrine of res judicata bars Goodwin's first through 10th causes of action against the Hospital and Oh*

The trial court sustained the Hospital's demurrer on the alternative ground that Goodwin's causes of action were barred by the doctrine of res judicata. Oh also demurred on the ground the complaint against him was barred by the doctrines of res judicata and collateral estoppel, and moved to strike the complaint on the same ground.[7] The trial court found the motion to strike was moot in light of its disposition on the demurrer; it did not reach the issue when sustaining the demurrer. The Hospital argues

---

[6]    In light of our conclusion, we do not address the contention that 42 Code of Federal Regulations sections 482.13(b)(2) and 482.51(b)(2) do not give rise to a private right of action, or that the complaint failed to state a cause of action for deceit.

[7]    Oh complains that Goodwin has waived any argument regarding the res judicata bar because he did not raise it vis-à-vis Oh in his opening brief. However, since the trial court's ruling, as to Oh, was not based upon the doctrine of res judicata, Goodwin could not reasonably be expected to make such an argument. Oh's contention is therefore not persuasive.

17

its demurrer was properly sustained on res judicata grounds. Oh argues that, although the trial court below did not reach the issue, the trial court's order can and should be affirmed on res judicata grounds. (See *Little v. Los Angeles County Assessment Appeals Bds.* (2007) 155 Cal.App.4th 915, 925, fn. 6 ["Respondents are free to urge affirmance of the judgment on grounds other than those cited by the trial court"].) Dr. Oh also points out that while the judgment was not final as to him when the demurrer was heard, it is now final, and this ground may properly be considered. (See *Sutton v. Golden Gate Bridge, Highway & Transportation Dist.* (1998) 68 Cal.App.4th 1149, 1154, fn. 1; *Palm Springs Paint Co. v. Arenas* (1966) 242 Cal.App.2d 682, 688; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶ 8:187.5, p. 8-153.)

"The doctrine of res judicata prohibits a second suit between the same parties on the same cause of action. In this context, the term 'cause of action' is defined in terms of a primary right and a breach of the corresponding duty; the primary right and the breach together constitute the cause of action." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 792 (*Boeken*); *Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1427; *Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82.) The doctrine gives conclusive effect to a former judgment in subsequent litigation involving the same controversy. (*Boeken, supra,* at p. 797; *Griset, supra,* 25 Cal.4th at pp. 701-702.) The doctrine applies when " '(1) [a] claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.' " (*Boeken, supra,* at p. 797.)

To determine whether two proceedings involve identical causes of action, California courts apply the primary rights theory. (*Boeken, supra,* 48 Cal.4th at p. 797.) "Under this theory, '[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests. "Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term . . . ." ' "

18

(*Id.* at pp. 797-798.) " 'In California the phrase "causes of action" is often used indiscriminately . . . to mean *counts* which state [according to different legal theories] the same cause of action . . . .' [Citation.] But for purposes of applying the doctrine of res judicata, the phrase 'cause of action' has a more precise meaning: The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced. [Citation.] . . . 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief." [Citations.]' " (*Id.* at p. 798; *Hindin v. Rust* (2004) 118 Cal.App.4th 1247, 1258.) Res judicata "bars the litigation not only of issues that were actually litigated in the prior proceeding, but also issues that could have been litigated in that proceeding." (*Zevnik v. Superior Court, supra,* 159 Cal.App.4th at p. 82.)

"[F]or purposes of applying the doctrine of res judicata . . . a dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action." (*Boeken, supra,* 48 Cal.4th at p. 793.) The same is true as to judgments had by way of demurrer and summary judgment. (*Pollock v. University of Southern California, supra,* 112 Cal.App.4th at p. 1428; *Acuña v. Regents of University of California* (1997) 56 Cal.App.4th 639, 648; *Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 285-287 [summary judgment is on the merits for res judicata purposes unless granted because of lack of jurisdiction or a procedural defect].)

Applying these principles here, it is clear the demurrer to the first through 10th causes of action was properly sustained. Both lawsuits are premised on the same incident: the treatment at the Hospital and the surgery performed by Oh in October 2010. The primary right at issue is Goodwin's right to be free from unwanted and injurious surgery. Although Goodwin has, in his second lawsuit, alleged additional legal theories, application of the res judicata doctrine does not turn on the particular legal theory asserted. (*Boeken, supra,* 48 Cal.4th at p. 798; *Pollock v. University of Southern*

19

*California, supra,* 112 Cal.App.4th at p. 1427.)  Accordingly, res judicata bars the maintenance of the second suit against the Hospital and Oh on the first through 10th causes of action.

Goodwin argues, as he did in his statute of limitations argument, that he has suffered two distinct injuries that "have two distinct primary rights, even [though] they were caused by the same surgery."  For the reasons explained *ante,* these contentions lack merit.  Citing *Patapoff v. Reliable Escrow Service Corp.* (1962) 201 Cal.App.2d 484, Goodwin appears to argue that res judicata principles do not apply to a subsequent suit for damages based on fraud.  Goodwin's theory is that Dr. Oh purportedly lied at his deposition by claiming he was referred by Dr. Hakak, so he could make more money, thereby committing fraud; and a nurse also lied at her deposition.  Apart from the issue of whether the alleged facts constitute "fraud," *Patapoff* was not a medical malpractice case, and we do not read it as authority for the proposition that the res judicata doctrine is generally inapplicable to fraud claims.

Goodwin further argues that the trial court in the first action erred by denying his motion to set aside the dismissal of the hospital.  He contends that the dismissal with prejudice was filed by mistake, without his authorization, and his motion to set aside the dismissal should therefore have been granted.  (See *Romadka v. Hoge* (1991) 232 Cal.App.3d 1231, 1236 ["An attorney's unauthorized disposition of clients' substantive rights is invalid and a judgment based thereon is therefore void"].)  The problem with Goodwin's argument is that he may not, at this juncture, appeal the court's ruling on the order to this court.  As noted, review in the first case was dismissed, and decisions arising in that case are final.[8]

---

[8]     Citing *H. D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1364, the Hospital argues that a voluntary dismissal of an action is not appealable. Goodwin disagrees.  Here, the order at issue is not a voluntary dismissal, but the denial of a motion to vacate or set aside a voluntary dismissal.  Whether, as a general matter, such an order is appealable is beside the point, because judgment in KC062033 is final.

20

5. *Issues related to the 12th cause of action*

a. *Additional facts*

As noted, during the pendency of the KC062033 action, a dispute arose between Oh and Goodwin regarding the conduct of Oh's deposition. After Goodwin averred that Oh's counsel, Cannon, was improperly "coaching" Oh during a break in the proceedings, Cannon terminated the deposition. According to Cannon, when he sought to consult privately with Oh during a break, Goodwin followed Oh and Cannon around the hotel where the deposition was taking place, preventing them from conferring in private. According to Goodwin, Cannon repeatedly asked to go off the record, during which time he coached Oh to change his testimony. Oh moved for a protective order and sought sanctions against Goodwin. Goodwin moved for sanctions against Cannon for misconduct pursuant to section 2023.010. The trial court granted Oh's motion for a protective order, prohibiting Goodwin from further deposing him absent court order. The court denied Goodwin's motion for sanctions.

Goodwin's 12th cause of action in the operative complaint, alleged against attorney Cannon and Dr. Oh, was for "violation of Los Angeles Superior Court Rule 3.26 Appendix 3.A(e)(8)." Goodwin alleged that when he was taking Oh's deposition in May and June 2012, "[w]hen questions about surgery consent and other things were asked and pending, defendant Christopher Cannon recklessly forced to take a break, went out of conference room with his client Anthony Oh, then coached Anthony Oh. When depositions continued, Anthony Oh lied." This conduct "violated said court rule. From the unlawful coaching, defendant Christopher Cannon explicitly or implicitly coached his client Anthony Oh to lie. Doctor Anthony Oh lied about doctor referring, surgery consent, and other things, in the depositions." As a result, "defendants damaged the litigation process, and significantly and badly affected the outcome of plaintiff's case."

Oh and Cannon demurred to the 12th cause of action on the grounds, inter alia, it failed to state facts sufficient to constitute a cause of action and was barred by the litigation privilege; they also brought anti-SLAPP motions on the grounds the challenged

21

communications were privileged under section 425.16.  The motions also sought attorneys' fees.

The trial court sustained both demurrers without leave to amend.  It ruled that the litigation privilege applied, and the local court rule did not create a cause of action for damages.  It granted Cannon's and Oh's motions to strike because Cannon's advice to his client, in the midst of a deposition, qualified as a right arising from Oh's right to petition or free speech, and Goodwin could not establish a probability of prevailing on his claim.

b. *The demurrers to the 12th cause of action were properly sustained without leave to amend*

The trial court properly sustained the demurrers to the 12th cause of action. Los Angeles County Superior Court, Local Rules, rule 3.26 provides, "The guidelines adopted by the Los Angeles County Bar Association are adopted as civility in litigation recommendations to members of the bar, and are contained in Appendix 3.A."  Appendix 3.A(e)(8) provides: "While a question is pending, counsel should not, through objections or otherwise, coach the deponent or suggest answers."  Goodwin cites no persuasive authority for the novel proposition that violation of this guideline gives rise to a cause of action, and we are aware of none.  Violations of discovery rules are enforceable via sanctions.  (See §§ 2023.030 [court may impose monetary or other sanctions for misuse of the discovery process]; 575.2.)  The authorities cited by Goodwin (*Hall v. Clifton Precision* (E.D.Pa. 1993) 150 F.R.D. 525, and *Tucker v. Pacific Bell Mobile Services* (2010) 186 Cal.App.4th 1548, do not assist him.  In *Tucker,* the appellate court upheld a portion of a court's order awarding monetary sanctions for abuse of the discovery process after an attorney coached a deponent.  (*Tucker, supra,* at pp. 1551, 1562.)  In *Hall,* a federal district court opined that coaching a witness during a deposition was improper, and made an "[o]rder containing guidelines for the conduct of the depositions of parties and other witnesses represented by counsel" in that case.  (*Hall v. Clifton Precision, supra,* at p. 531.)  Neither of these cases in any way suggest that a private right of action exists for violation of a local court guideline.

22

The trial court also correctly ruled that the communications between Oh and Cannon were not actionable because they were shielded by the litigation privilege. The litigation privilege is codified in Civil Code section 47, which provides, in pertinent part, that a privileged publication or broadcast is one made in any "judicial proceeding." (Civ. Code, § 47, subd. (b).) " 'Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution. [Citations.] Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, *even though the publication is made outside the courtroom and no function of the court or its officers is involved*. [Citations.] [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.] Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation]. *It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards*. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057, italics added; see also *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) The litigation privilege has been given "broad application," and applies to any communication, whether or not it amounts to a publication. (*Silberg,* at pp. 211-212.)

Here, the challenged conduct – consultations between lawyer and client – was clearly communicative. (See generally *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1058.) The communications were between a litigant and his attorney, in a deposition, were related to judicial proceedings, and made to achieve the objects of the litigation. Accordingly, the challenged communications were covered by the litigation privilege. (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 212; *Rusheen v. Cohen, supra,* at p. 1052 [concluding that the litigation privilege protected the communicative act of filing declarations of service in an abuse of process case].)

23

Goodwin's argument -- that the litigation privilege only covers proceedings held before judicial officers, and Cannon's conduct did not qualify because it occurred during a break in a deposition -- is incorrect. (See *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1057; *Silberg v. Anderson, supra,* 50 Cal.3d at p. 212 [the litigation privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved"].)

c. *The anti-SLAPP motion was properly granted.*

Goodwin's challenge to the trial court's grant of Oh's and the Hospital's special motion to strike likewise lacks merit.

"Code of Civil Procedure section 425.16 provides a procedure for the early dismissal of what are commonly known as SLAPP suits (strategic lawsuits against public participation)—litigation of a harassing nature, brought to challenge the exercise of protected free speech rights." (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3; *Rusheen v. Cohen, supra,* 37 Cal.4th at pp. 1055-1056.) We independently review a trial court's ruling on a special motion to strike brought pursuant to section 425.16. (*Rusheen v. Cohen,* at p. 1055.)

Section 425.16, subdivision (e) provides in pertinent part: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."

"In evaluating an anti-SLAPP motion, the trial court first determines whether the defendant has made a threshold showing that the challenged cause of action arises from protected activity. [Citation.] . . . 'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.'

[Citations.] 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.] *This includes qualifying acts committed by attorneys in representing clients in litigation.* [Citations.]" (*Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1056, italics added.) If the court finds the defendant has made the threshold showing, it determines then whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Ibid.*) To establish a probability of prevailing on the claim, the plaintiff must demonstrate that the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. (*Ibid.*)

Cannon's alleged conduct at Oh's deposition falls within the purview of section 425.16. Conferences between Oh and Cannon during the course of the deposition were made in connection with an issue under consideration by a judicial body, in that they were directly related to Goodwin's pending lawsuit, in which Oh was a defendant and Cannon was counsel. As we have discussed, Goodwin could not have demonstrated a probability of prevailing on his 12th cause of action. Accordingly, the motion was properly granted.

Goodwin contends that because the communications at issue were not made before a legislative, executive, or judicial body, they fall outside the statute's rubric. In his view, the only type of speech that falls within the statute is "speech before public officers." He is incorrect. (See, e.g., *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115-1116; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 ["The fact that the communication was made to other private citizens rather than to the official agency does not exclude it from the shelter of the anti-SLAPP suit statute"]; *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 36-37 [voice mail messages concerning the subject of dispute were in anticipation of contemplated litigation and were protected activity]; *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1262.)

Goodwin also avers that since improperly coaching a witness is unethical, recognizing such conduct as free speech is "bizarre and illogical." However,

" ' "[c]onduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage . . . simply because it is alleged to have been unlawful or unethical." [Citations.]  An exception to the use of section 425.16 applies only if a "defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law." ' " (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 482.)  That exception does not apply here, in light of the fact the trial court granted Oh's motion for a protective order and denied Goodwin's request for sanctions based on the allegedly unethical conduct.  (See *Cabral, supra,* at p. 482; *G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 612-616.)

## DISPOSITION

The appeal is dismissed as it pertains to Khalife. The judgments are otherwise affirmed. Respondents are entitled to costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:


EDMON, P. J.


JONES, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.